# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DELLIS MICHAEL BASKIN, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:16-CV-180-TLS |
| CITY OF FORT WAYNE, SERGEANT TRENT FARRELL, SERGEANT TODD HUGHES, OFFICER TIM HANNON, OFFICER DOUGLAS WEAVER, OFFICER DAVID TINSLEY, OFFICER ANDREW BECK, and OFFICER NICOLAS LICHTSINN, | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Plaintiff, Dellis Michael Baskin, has sued the City of Fort Wayne and seven Fort Wayne Police Department officers alleging various federal and state law violations stemming from his interactions with police on July 20, 2014, and the state court criminal charges that followed. This matter is before the Court on the Defendants' Motion for Partial Summary Judgment [ECF No. 22], filed by Defendants City of Fort Wayne, Sergeant Trent Farrell, Sergeant Todd Hughes, Officer Tim Hannon, Officer Douglas Weaver, Officer David Tinsley, Officer Andrew Beck, and Officer Nicolas Lichtsinn. The Defendants contend that they are entitled to judgment as a matter of law on the Plaintiff's Second Amendment claim for seizure of his firearm during the course of an arrest, and his state law claims for malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. The Defendants also assert that the Plaintiff will be unable to meet his burden of proof at trial regarding his claim that the Defendants' actions caused permanent nerve damage.

The Plaintiff counters that all these claims, and the related issues, are matters for a jury's

consideration.

## SUMMARY OF THE FACTS

The Three Rivers Festival took place in Fort Wayne, Indiana, on July 20, 2014. An increased police presence in the vicinity of the intersection of two downtown streets, Columbia Street and Harrison Street, was intended to provide crowd control for the mass of people leaving the bars and beer tents that closed down at 3:00 a.m. The Plaintiff was one of the people leaving the area. As he did so, the Plaintiff interacted with the police. This interaction led to his arrest for obstructing traffic and, eventually, to this lawsuit. In this litigation, the Plaintiff challenges the basis for the arrest, as well as the manner in which it was carried out. He claims that the Defendants did not have probable cause to arrest him for obstructing traffic or to support the probable cause affidavit, and that the Defendants used excessive force while removing him from his motorcycle and placing him in the squad car, as well as during the time he was in their custody at a hospital awaiting medical clearance.

During the course of the arrest, an officer took a firearm that the Plaintiff had in his waistband. Several months later, after the Plaintiff was found not guilty on charges that he resisted arrest, the same firearm was returned to him. One of the claims the Plaintiff makes related to his injuries is that he suffered permanent nerve damage as a result of his July 20, 2014, interaction with the Defendants.

## ANALYSIS

This Court will only grant summary judgment if all of the admissible submissions indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(a). The court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

**A.     Second Amendment**

In Count VIII of his Complaint, the Plaintiff alleges that Sgt. Farrell, Sgt. Hannon, and Officer Beck violated his rights under the Second Amendment. He contends that he was being unlawfully detained and arrested when the Defendants removed the firearm from his person and retained it.

When public officers violate the constitutional rights of citizens, 42 U.S.C. § 1983 provides the vehicle for a legal claim. But the Defendants have asserted that they are entitled to qualified immunity, which is a doctrine that protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Qualified immunity is intended to strike a balance between "protect[ing] a government official's ability to function without the threat of distraction and liability" and "afford[ing] members of the public the ability to vindicate constitutional violations

by government officials who abuse their offices." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) (internal quotation marks and citations omitted). Evaluating a qualified immunity defense requires two inquires: (1) whether the facts, taken in the light most favorable to the plaintiffs, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Williams v. City of Chi.*, 733 F.3d 749, 758 (7th Cir. 2013) (citation omitted). "If *either* inquiry is answered in the negative, the defendant official is entitled to summary judgment." *Gibbs*, 755 F.3d at 537. The Court is not required to address the prongs in order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Defendants assert that they are entitled to qualified immunity because, not only was there no Second Amendment violation but, no case law as of July 2014 would have put them on notice that removing a firearm from a person during the course of an arrest is a violation of the Second Amendment. In fact, *Sutterfield v. City of Milwaukee*, 751 F.3d 542 (7th Cir. 2014), decided just months before the Plaintiff's arrest, confirms that the Second Amendment right the Plaintiff asserts was not clearly established. In *Sutterfield*, the plaintiff argued that the defendants violated her Second Amendment rights when they removed her gun from her residence when they took her into custody and transported her for an evaluation by mental health professionals pursuant to state law. Notably, the plaintiff cited the same Second Amendment cases that the Plaintiff cites here in support of his claim. The *Sutterfield* court recognized that "[w]hether and to what extent the Second Amendment protects an individual's right to possess a particular gun (and limits the power of the police to seize it absent probable cause to believe it was involved in a crime) is an issue that is just beginning to receive judicial attention." *Sutterfield*, 751 F.3d at 571. However, it was clear under that same caselaw that the Second Amendment right to possess

a firearm "is not unlimited." *Id.* (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). Accordingly, the court granted qualified immunity to the defendants without reaching the merits of the claim. *Id.* at 577–79.

Because the Defendants have raised qualified immunity as a defense to the Plaintiff's Second Amendment claim, it is the Plaintiff's burden to defeat it. *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008). The Plaintiff has not satisfied his burden to identify "existing precedent" that would "have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks omitted). As stated above, two of the cases he cited were not deemed sufficient in *Sutterfield*—a case the Plaintiff does not even acknowledge. A third case, *Perry v. Sheahan*, 222 F.3d 309, 316 (7th Cir. 2000), is cited for the proposition that "[i]t is beyond question that the *Fourth Amendment* applies to seizures of firearms." (emphasis added).

The Plaintiff's claim that his firearm was wrongfully seized because the Defendants did not have probable cause to arrest him does not clearly implicate his Second Amendment rights. Accordingly, the Defendants are entitled to qualified immunity and to summary judgment on Count VIII of the Complaint.

### B.     State Law Claims

The Plaintiff's Complaint alleges various state law torts, including assault and battery (Counts IX, X, and XI), intentional and negligent infliction of emotional distress (Count XII and XIII), and negligence (Count IX). The Defendants argue that the Indiana Tort Claims Act's immunity provision, Ind. Code § 34-13-3-3(8), entitles them to summary judgment on the

Plaintiff's state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. The Defendants assert the same with respect to the malicious prosecution claim, but the Plaintiff asserts, and his Complaint appears to confirm, that he is pursuing his malicious prosecution claim under federal law. With regard to the other claims, the Plaintiff's position is that immunity does not attach because the Defendants' actions were taken outside the scope of their employment.

The Indiana Tort Claims Act (ITCA) limits when a plaintiff can sue a governmental employee personally. *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003). A lawsuit alleging that a government employee acted within the scope of his employment is barred against the employee personally. *See* Ind. Code § 34–13–3–5(b). In fact, a lawsuit against a government employee in his personal capacity must specifically allege that the employee acted outside of the scope of his employment or that the employee's act or omission was criminal, malicious, willful and wanton, or calculated to benefit the employee personally. Ind. Code § 34–13–3–5(c). Additionally, a more specific provision provides that neither a governmental entity nor a government employee acting within the scope of his employment is liable if a loss results from the adoption and enforcement of a law, "unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34–13–3–3(8). Indiana Courts have made clear that the ITCA immunity provision goes so far as to protect officers from liability for both tortious and even criminal acts where the purpose of the employee's conduct was to further the employer's business. *See City of Anderson v. Weatherford*, 714 N.E.2d 181, 186 (Ind. Ct. App. 1999) (citing *Kemezy v. Peters*, 622 N.E.2d 1296, 1298 (Ind. 1993)); *see also Serino v. Hensley*, 735 F.3d 588 (7th Cir. 2013). "Common law 'add-on' torts, such as [intentional infliction of emotional

distress] IIED, are not exceptions to the law enforcement immunity under the ITCA." *Parish v. City of Elkhart*, No. 3:07-CV-452, 2010 WL 4054271, at *4 (N.D. Ind. Oct. 15, 2010).

When an employee's conduct is of the same general nature as that authorized or incidental to the conduct authorized, it is within the scope of employment. *Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1208 (Ind. Ct. App. 2011). The Plaintiff's state law claims arise out of actions the Defendants took while performing crowd and traffic control functions in full police uniform. Arresting and transporting the Plaintiff for obstructing traffic was conduct that is of the same general nature as the everyday duties of law enforcement officers, and their actions furthered the Fort Wayne Police Department's business. The loss the Plaintiff alleges resulted from the Defendants' enforcement of a law. Accordingly, the ITCA provides immunity from the Plaintiff's intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence claims, and summary judgment is granted for the Defendants.

### C. Nerve Damage

The Defendants assert that they are entitled to judgment as a matter of law on the Plaintiff's claim that the Defendants' actions caused him to suffer permanent nerve damage. They insist that, because he has failed to disclose an expert witness that will testify in support of causation, the Plaintiff cannot present his argument to a jury. They assert that the origin of the nerve damage cannot be discerned by a layman, particularly where, as here, the Plaintiff has a long history of nerve damage. The Plaintiff does not deny that his injuries were the exacerbation of a pre-existing condition, but maintains that expert testimony is not necessary to understand this.

The Court agrees that summary judgment is not appropriate. The Seventh Circuit has "never held that a plaintiff bears any burden (beyond relevance) before that plaintiff's injuries may be considered in an excessive-force case." *McAllister v. Price*, 615 F.3d 877, 882 (7th Cir. 2010) (rejecting argument that evidence of the plaintiff's hip injury was inadmissible because the plaintiff could not establish proximate cause between the injury and the use of force). The Plaintiff's subjective testimony may provide the necessary connection to render the evidence relevant. *Cf. id.* (finding that the plaintiff's testimony that he was not in pain before he was taken to the ground, but afterward he was unable to walk corroborated his claim that he was injured by the defendant instead of by earlier car accidents). Even were this not the case, the Court would not find it appropriate to use summary judgment (which addresses claims and defenses, not evidence) to rule that the Plaintiff's testimony about his injuries or the extent of his damages is inadmissible.

## CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment [ECF No. 22] is GRANTED IN PART and DENIED IN PART. The Second Amendment claims, as well as the state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence are resolved as a matter of law in favor of the Defendants.

SO ORDERED on October 20, 2017.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT