# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| DELLIS MICHAEL BASKIN, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:16-CV-180-TLS |
| CITY OF FORT WAYNE, SERGEANT TRENT FARRELL, SERGEANT TODD HUGHES, OFFICER TIM HANNON, OFFICER DOUGLAS WEAVER, OFFICER DAVID TINSLEY, OFFICER ANDREW BECK, and OFFICER NICOLAS LICHTSINN, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

The Plaintiff, Dellis Michael Baskin, has sued the City of Fort Wayne and seven Fort Wayne Police Department officers alleging various federal and state law violations stemming from his interactions with police on July 20, 2014, and the state court criminal charges that followed. This matter is before the Court on what the Plaintiff has titled as a Partial Motion for Summary Judgment [ECF No. 24], asking for judgment as a matter of law on fewer than all claims he asserts in this litigation. The Plaintiff believes that it is not necessary for a jury to decide his claims for false arrest, excessive force while being handcuffed and placed in a squad car, failure to intervene, or malicious prosecution because he has proven these claims as a matter of law. The Defendants maintain that they have presented facts to dispute those that the Plaintiff asserts in support of his Motion, and that these disputes and the accompanying credibility determinations must be assessed and decided by a jury.

For the reasons stated in this Opinion and Order, the Court will deny the Plaintiff's

Motion. On summary judgment, the Court does not examine the credibility of the witnesses or the weight of the evidence, and must construe all facts and take all reasonable inferences to favor the nonmoving party. In this case, there are two very different stories of what happened on July 20, 2014, and it will be the jury's task to determine whose version is accurate.

**SUMMARY OF THE FACTS**

The Three Rivers Festival took place in Fort Wayne, Indiana, on July 20, 2014. An increased police presence in the vicinity of the intersection of two downtown streets, Columbia Street and Harrison Street, was intended to provide crowd control for the mass of people leaving the bars and beer tents that closed down at 3:00 a.m. Shortly before they closed, police were called to assist with an individual who was asked to leave a beer tent because he had a gun. A chaotic scene ensued, which included members of the crowd yelling at the officers and becoming physically aggressive. The police made an arrest, but the agitated and aggressive behavior of the crowd continued when the beer tent closed. Officer Hughs, after issuing a warning to disperse or he would use OC spray (also referred to as pepper spray), directed six short bursts of OC spray directly into the air.

After the use of the OC spray, members of the crowd began to make their way toward their vehicles and homes. Many people were attempting to leave a small area at one time, so there was heavy foot traffic in the area of Columbia Street and Harrison Street. Columbia Street was closed to vehicles, but Harrison Street was open to two-way traffic. The Plaintiff was one of the people in the streets at this time, but he was on a motorcycle. He drove his motorcycle on Columbia Street to where it created a "T" intersection with Harrison Street. The Plaintiff began

to engage with the officers, expressing his concern over the use of OC spray. The parties offer differing accounts of what transpired from this point. According to testimony from the Defendants, the Plaintiff refused to leave the area despite instructions to do so, and continued to yell at the officers until he was arrested for obstruction of traffic. In the Plaintiff's version, he was not obstructing traffic. The parties also provide differing accounts of the events during and after the Plaintiff's arrest. The Defendants describe the Plaintiff as ignoring their instructions and actively resisting their attempts to place him in the squad car, while the Plaintiff describes natural and non-threatening responses to aggressive police conduct that unreasonably elicited increased force. The Court will discuss the specific differences that are relevant to the pending motion in the analysis section below.

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is not appropriate. *See Shields Enters., Inc. v. First Chi. Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir. 1989).

**A.     False Arrest**

"Where an arrest occurs without probable cause, the plaintiff may bring a claim for unreasonable seizure" under § 1983 and the Fourth Amendment. *Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009) (citing *A.M. v. Butler*, 360 F.3d 787, 798 (7th Cir. 2004); *see also Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005) ("a false arrest is an unreasonable seizure prohibited by the Fourth Amendment"). "The existence of probable cause to arrest a suspect for any offense . . . will defeat a Fourth Amendment false-arrest claim." *Sroga v. Weiglen*, 649 F.3d 604, 608 (7th Cir. 2011); *Fernandez v. Perez*, 937 F.2d 368, 370 (7th Cir. 1991). Law enforcement officers have probable cause to arrest a suspect when "'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006) (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)).

On July 20, 2014, Sgt. Farrell arrested the Plaintiff for obstructing traffic. Indiana law on that date made it an offense to "recklessly, knowingly, or intentionally obstruct[] vehicular or pedestrian traffic." Ind. Code § 35-44.1-2-13 (modified 2015). The Plaintiff asserts that Sgt. Farrell did not have probable cause to arrest him for obstructing traffic. As proof, the Plaintiff designates Officer Hannon's testimony that he instructed the Plaintiff to stop to avoid a collision on Harrison Street. He also offers the testimony of a bystander about her cell phone video which, he argues, shows that the Plaintiff's motorcycle was not far enough into Harrison Street to block any vehicular traffic.

The Plaintiff argues that the bystander's testimony, the cell phone video, and Officer

4

Hannon's testimony all show that no reasonable jury could find that the Defendants had probable cause to arrest the Plaintiff for obstructing traffic. This evidence, he argues, proves that he was not in the way of traffic until he pulled out, but there was no basis to arrest him at that point because an officer directed him to stop. The Defendants, however, have put forth evidence that Sgt. Farrell and Officer Hannon instructed the Plaintiff to clear the intersection multiple times before he finally pulled out onto Harrison Street as if to leave. The Defendant officers who witnessed this state that the Plaintiff pulled out without looking for oncoming traffic. They admit that the Plaintiff was told to stop to avoid a collision at that point, but they maintain that Sgt. Farrell again told the Plaintiff to move on and that he failed to do so despite ample opportunity.

Sgt. Farrell's testimony on this point alone would create a genuine issue of material fact. The Plaintiff asserts that the Court should not credit Sgt. Farrell's testimony regarding the events leading up to the arrest because the cell phone video "clearly shows that the motorcycle is not in the intersection and is sitting several feet short of Harrison." (Pl.'s Mem. 20, ECF No. 25.) According to the Plaintiff, the Court would not be making an improper credibility determination if it disregarded Sgt. Farrell's account because "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (court was not required to accept the plaintiff's version of a car chase as benign where it was refuted by videotape of the chase that "more closely resembled a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury").

The Plaintiff's false arrest claim is not amenable to summary resolution. First, the

5

Plaintiff presents and interprets all of the evidence in a light most favorable to himself, the moving party. He ignores the fact that the Defendants have presented evidence that supports a different version of the events leading up to the Plaintiff's arrest. This includes not just Sgt. Farrell's testimony, but Officer Hannon's testimony that the Plaintiff was indeed refusing to move from a position that obstructed traffic on Harrison, despite being told to move and having ample opportunity to do so. According to this testimony, he was told to stop only when he pulled further into the street without looking and almost caused a collision with a vehicle. Thereafter, he again had time to move, but instead chose to stare down the officers. Additionally, the cell phone video is not as conclusive as the Plaintiff contends. The recording does not even begin until after the Plaintiff has been placed in handcuffs. The video is not taken from a perspective that conclusively shows how far the motorcycle extended onto Harrison Street, if at all. While the Plaintiff has provided an expert's analysis of the video that supports one interpretation, the Defendants have also provided expert testimony, which contradicts the Plaintiff's claim that the video conclusively disproves Sgt. Farrell's account. As the dissent in *Scott* noted, a video may not tell the whole story and reasonable people can sometimes draw different conclusions from the same video. 550 U.S. at 395–96 (Stevens, J., dissenting).

Finally, the Court notes that the parties' arguments focus exclusively on whether the Plaintiff's motorcycle was obstructing vehicular traffic. However, the statute also refers to pedestrian traffic, and the evidence before the Court is that there was a large crowd on foot trying to maneuver through the area. It is undisputed that one of the reasons the Defendant officers were positioned in the area was to keep watch over the flow of traffic. These are factors a jury could take into account. The probable cause determination must be made by a jury where, as here,

6

"there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008) (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)); *see also Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) ("Only if the underlying facts claimed to support probable cause are not in dispute may the court decide whether probable cause exists."). A jury must determine whether the Plaintiff is entitled to recover on his Fourth Amendment false arrest claim.

**B.  Excessive Force**

The Plaintiff claims that the officers used an unreasonable amount of force when they handcuffed him and removed him from the motorcycle, and while they were placing him in the squad car for transport. He claims that the Defendants had no right to touch him and remove him from the motorcycle because he was not offering any physical resistance. The Plaintiff asserts that his only reactions during the pat down search were unintentional, and that they did not warrant Sgt. Farrell's strikes to his peroneal nerve. Moreover, Sgt. Farrell should have known that it was those strikes that caused the Plaintiff to be uncooperative in moving his legs, and thus it was unreasonable to resort to the use of pepper spray. Because it was the use of the spray that rendered the Plaintiff unable to respond to the Defendant's orders, Sgt. Todd Hughes acted unreasonably when he drive stunned the Plaintiff's right thigh with a taser. The Plaintiff asserts that Defendants "unreasonably characterized [his] movements as resisting law enforcement, when a reasonable officer would have recognized that [he] was not resisting and that the escalation of force was making the issues worse." (Pl.'s Mem. 24, ECF No. 25.)

The Defendants' designated evidence tells a difference story. According to the

Defendants' evidence, the Plaintiff was instructed to put his hands behind his back after he failed to comply with commands to get off of the motorcycle. Then, when Sgt. Farrell and Officer Hannon handcuffed the Plaintiff, they used proper precautions to ensure their safety and the safety of bystanders posed by the Plaintiff's possession of a handgun. Sgt. Farrell denies that he used any peroneal strikes on the Plaintiff during the pat down. When it came to placing the Plaintiff in the squad car, the Defendants characterize the Plaintiff's actions as active resistance. The Plaintiff refused verbal commands to get in the car, so Sgt. Farrell tried to push on the Plaintiff's joints where he would naturally bend when sitting down. Their use of minimal force only increased when the Plaintiff continued to resist by tensing his muscles, pushing back against Sgt. Farrell, and kicking at Sgt. Farrell. Moreover, the Plaintiff was given an opportunity to comply before each use of force, but he continued to resist.

A claim that a police officer has used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a citizen is addressed to the reasonableness of the seizure under the standards established by the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 395 (1989); *Abdullahi v. City of Madison,* 423 F.3d 763, 768 (7th Cir. 2005). The reasonableness inquiry involves a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). Courts must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The reasonableness inquiry must allow for the fact that "police officers are often forced to make split-second

judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. This "reasonableness inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." *Sallenger v. Oakes*, 473 F.3d 731, 742 (7th Cir. 2007) (internal quotation marks omitted).

In the present case, the material differences between the Plaintiff's and the Defendants' versions of events raises issues that render summary judgment an inappropriate litigation tool. As the Defendants' note, the disagreement regarding the Plaintiff's behavior and how the officers would have reasonably perceived his behavior, creates a dispute as to whether the amount of force used was reasonable. Indeed, each side has obtained its own expert, and these experts have arrived at differing conclusions because they focus on different versions of the July 20 events. The task of ascertaining who is telling the truth, choosing between competing inferences, and balancing the relative weight of conflicting evidence about the events of July 20, 2014, belongs to a jury. It is well established that "the district court cannot weigh credibility issues at the summary judgment stage." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 934 (7th Cir. 2008) (quoting *Stuart v. Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir. 1992)); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants.").

The Court has no difficulty concluding that factual disputes and credibility issues preclude summary judgment on the Plaintiff's claims for violations of his Fourth Amendment rights based on the reasonableness of the force used during his detention and arrest. When the facts are viewed in a light most favorable to the Defendants, as they must be when considering

9

the Plaintiff's Motion, a jury would not be required to find in the Plaintiff's favor.

## C.     Bystander Liability

The Plaintiff has moved for summary judgment on his bystander liability claims against all of the Defendants who were present at the scene of the arrest: Sgt. Farrell, Officer David Tinsley, Sgt. Hughes, and Officer Hannon. He maintains that there is no dispute regarding their proximity to the events in question, or their ability to intervene. The Defendants respond that the Plaintiff cannot satisfy one of the essential elements of a bystander claim—that an officer witnessed a violation and failed to intervene despite a realistic opportunity to do so.

In his Reply Brief, the Plaintiff criticizes the Defendants for only substantively addressing the Plaintiff's assertions regarding the actions of Sgt. Hannon and Officer Tinsley, but remaining silent about the actions of Sgt. Farrell and Officer Hughes as they relate to bystander liability. The Plaintiff argues that because the Defendants did not address the actions of, or make arguments on behalf of, Sgt. Farrell and Officer Hughes, the Defendants "have waived their argument on summary judgment and have conceded that Sgt. Farrell and Officer Hughes failed to intervene in their fellow officers' unlawful uses of force." (Pl.'s Reply 9, ECF No. 31.) The Court does not agree with the Plaintiff's assessment.

The Defendants, in fact, did address all the Plaintiff's bystander claims when they asserted that there was a dispute as to whether any of the Defendants' actions, whether witnessed by another Defendant or not, violated the Plaintiff's right to be free from the use of excessive force during an arrest. In light of this dispute, there is a corollary dispute as to whether bystander liability can be imputed to any of the Defendants. It is an essential element of a bystander liability

10

claim that the bystander "had reason to know that a fellow officer was using excessive force or committing a constitutional violation." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). Moreover, even in cases where excessive force has already been established, other aspects of a failure to intervene claim "almost always implicate questions of fact for the jury: 'Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (emphasis omitted) (quoting *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997)). The crowded and chaotic scene described in this case does nothing to eliminate the need for a jury to decide the issues that normally accompany a bystander liability claim.

      Although no additional discussion is needed to deny the request for summary judgment, the Court also clarifies that the Defendants' response to the Plaintiff's summary judgment arguments does not amount to waiver or a concession of liability. While a plaintiff may be deemed to have abandoned a claim if he fails to set forth any evidence or to develop any arguments in opposition to a defendant's summary judgment motion, *see, e.g.*, *Palmer v. Marion Cty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) (deeming plaintiffs negligence claim abandoned because he failed to delineate it in his brief to the district court in opposition to summary judgment), a failure to address the movant's assertions is not a concession of liability in situations where the movant would bear the burden of proof at trial. As the party seeking summary judgment on a claim to which he would bear the burden of proof at trial, the Plaintiff was required to lay out the elements of the claim, cite the facts which it believes satisfies these

elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim. *See Reserve Supply Corp. v. Owens-Corning Fiberglass Corp.*, 971 F.2d 37, 42 (7th Cir. 1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (7th Cir. 1986) ("If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."). Even an unanswered motion for summary judgment cannot be granted unless the movant has shown that the facts warrant judgment in its favor. *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994). Thus, waiver is not an applicable concept and the Defendants had only to identify one genuine issue of material fact concerning one element of the Plaintiff's claim. They have done so.

D.  **Malicious Prosecution**

The elements of a federal malicious prosecution claim, borrowed from state law, require a plaintiff to prove that "(1) the defendant 'instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted with malice and (3) without probable cause; and (4) the action 'was terminated in the plaintiff's favor.'" *Katz-Crank v. Haskett*, 843 F.3d 641, 649 (7th Cir. 2016) (quoting *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001)). The issues of fact that remain with respect to probable cause, as identified above, make summary judgment inappropriate on the malicious prosecution claim. As the Defendants' note, these disputes regarding whether the Plaintiff was obstructing traffic also make it impossible to satisfy summary judgment standard with respect to the malice requirement of a malicious prosecution claim.

## CONCLUSION

For the reasons set forth above, the Court DENIES the Plaintiff's Partial [sic] Motion for Summary Judgment [ECF No. 24].

SO ORDERED on October 20, 2017.

                                             s/ Theresa L. Springmann
                                             CHIEF JUDGE THERESA L. SPRINGMANN
                                             UNITED STATES DISTRICT COURT